UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RONALD Z.

                Plaintiff,

   -v-

KILOLO KIJAKAZI
Commissioner of Social Security,

                Defendant.

1:20-CV-01792-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14).

Plaintiff Ronald Z.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Supplemental Security Income benefits (SSI) under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 11) is granted.

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, Plaintiff is identified solely by first name and last initial.

## BACKGROUND[2]

Plaintiff protectively filed an application for SSI on July 11, 2018 alleging disability since March 4, 2009 due to anxiety, depression, and agoraphobia. (*See* Tr. 103-04).[3] Plaintiff's SSI application was initially denied on October 4, 2018. (Tr. 146). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Paul W. Goodale on May 5, 2020, where Plaintiff testified and appeared with counsel. (Tr. 40-80). Vocational expert Dennis King also testified at the hearing. (*Id.*). On June 2, 2020, ALJ Goodale issued a decision that Plaintiff was not disabled under the Act. (Tr. 7-21). Plaintiff sought review of that decision by the Appeals Council and his request was denied. (Tr. 1-6). Plaintiff then filed the instant lawsuit.

Born on March 29, 1984, Plaintiff was 34 years old on the application date and 36 years old on the date of the May 5, 2020 hearing. (Tr. 17; 49). Plaintiff is able to communicate in English, has an 11th grade education, has obtained a GED, and has limited prior work history. (Tr. 49-50; 55-56).

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] The Court presumes the parties' familiarity with the Plaintiff's medical history, which is summarized in the moving papers.

[3] References to "Tr." are to the administrative record in this case.

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Plaintiff's claim. Under step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since his application date of July 11, 2018. (Tr. 12). At step two, the ALJ found that plaintiff had the following severe impairments: (1) depression; (2) anxiety disorder; and (3) agoraphobia (panic attacks). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 12-14). Before proceeding to step four, the ALJ assessed that Plaintiff had the following RFC:

> [T]he [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he could perform simple, routine, repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions and few, if any, workplace changes. He could not do assembly-line type work (i.e., outwardly paced, working in close tandem with co-workers), but could do individual table or bench work. The [Plaintiff] could have occasional contact with the general public, and superficial contact with co-workers and supervisors, apart from training periods.

(Tr. 14).

6

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE King to conclude that Plaintiff had no past relevant work but was capable of performing work at all exertional levels with certain non-exertional limitations, as described in the RFC. (Tr. 17-18). Proceeding to step five, and after considering testimony from VE King in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as janitor, auto detailer, and packer. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from July 11, 2018 through June 2, 2020, the date of the decision. (Tr. 18).

IV.   *Plaintiff's Challenges*

Plaintiff argues first that the ALJ failed to consider Plaintiff's chronic pain syndrome in his decision, and thus failed to properly consider the combined impact of Plaintiff's mental and physical impairments on his RFC. (Dkt. No. 9-1, pgs. 9-11). Second, Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony regarding his mental health impairments. (*Id.*, pgs. 12-15). The Court will discuss each argument in turn.

1.   *Consideration of Chronic Pain Syndrome*

It is Plaintiff's burden at step two of the sequential evaluation to prove that he has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). An impairment is "severe" under the Regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself,

7

sufficient to render a condition 'severe.'" *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016) (citations omitted); *Tryon v. Astrue*, 10-CV-537, 2012 U.S. Dist. LEXIS 14486, at * 6 (N.D.N.Y. Feb. 7, 2012). In assessing a claimant's RFC, the ALJ is required to consider the combined effects of the claimant's physical and mental impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to establish eligibility for benefits. *See Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009). Failure to incorporate or consider the combined effect of all a plaintiff's impairments requires remand. *See Frank J. v. Comm'r of Soc. Sec.*, 20-CV-687, 2021 U.S. Dist. LEXIS 177718, at *8 (W.D.N.Y. Sept. 17, 2021) ("[W]here an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate.") (citing *Fontanez v. Colvin*, 16-CV-1300, 2017 U.S. Dist. LEXIS 160048, at *46-47 (E.D.N.Y. Sept. 28, 2017)).

Plaintiff argues that the ALJ ignored his chronic pain syndrome and therefore failed to consider the combined impact of his mental and physical impairments. Plaintiff submits that the record demonstrates that he suffered from and was treated for chronic pain syndrome. (Tr. 396; 400). He points to two psychiatric treatment notes from physician assistant Sarah Ramsperger, PA-C dated September and October 2019 which reflect Plaintiff's description of suffering from this syndrome. The latter note states the following: "[m]edically speaking, we discussed the bidirectional effect on [plaintiff's] mental and physical health of the [plaintiff's] chronic pain. He continues to follow with chronic pain management." (Tr. 396).

The Government argues that the ALJ properly evaluated all of Plaintiff's impairments and that Plaintiff has failed to fulfill his step two burden to show that chronic pain, or any other alleged impairment, significantly affected his ability to perform work-related activities. Indeed, the record shows that Plaintiff did not include chronic pain syndrome in the Disability Report submitted to the Social Security Administration, nor in his brief submitted to the ALJ. (Tr. 46-47, 275, 319, 345-48). Even at the administrative hearing, Plaintiff failed to testify about this condition and his counsel plainly advised the ALJ that Plaintiff's claim involved "only mental impairments." (Tr. 47).

Plaintiff did not allege chronic pain syndrome in his application for disability. The ALJ need not evaluate this impairment if not alleged in the application for benefits. *Simmons v. Berryhill*, 17-CV-1076, 2019 U.S. Dist. LEXIS 96897, at *5 (W.D.N.Y. June 10, 2019) (citing *Chiaravalle v. Astrue*, 11-CV-597, 2012 U.S. Dist. LEXIS 126071, at *14-15 (W.D.N.Y Aug. 31, 2012) (rejecting plaintiff's argument that the ALJ failed to consider the combined impact of his ADHD because plaintiff did not allege ADHD as a disability when he applied for benefits)). The lack of discussion of this impairment in the ALJ's decision does not constitute error. Moreover, the record does not support a finding that chronic pain syndrome significantly restricted Plaintiff's ability to perform work-related activities. In addition to the complete absence of allegations from Plaintiff about this impairment or its impact on his functioning, the record does not contain any objective medical evidence to support a finding of impairment as a result of chronic pain. Plaintiff only identifies two brief references to this alleged condition in the record on appeal. As referenced above, these two instances are self-reports made during psychiatric treatment visits with PA Ramsperger. The record shows no other instances of Plaintiff reporting pain

symptoms or a chronic pain diagnosis to any of his medical providers. Moreover, in PA Ramsperger's March 2020 medical opinion, she indicated that Plaintiff had no physical medical conditions, no treatment for chronic pain, and no physical limitations. (Tr. 407-08). As such, Plaintiff has not met his burden to prove that his alleged chronic pain syndrome, or any other physical impairment, constituted a severe impairment. *See Stephen A. v. Comm'r of Soc. Sec.*, 19-CV-1679, 2021 U.S. Dist. LEXIS 54944, at *12 (W.D.N.Y. Mar. 23, 2021) (affirming step two findings where plaintiff "did not allege the impairment in his original disability application [], the impairment is not mentioned in the report of the consultative medical examiner, Plaintiff's counsel did not mention the impairment in his opening statements before the ALJ, and 'there are no updated treatment notes to suggest [the impairment] is an ongoing or functionally limiting impairment.'"); *Holdridge v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 316, 321 (W.D.N.Y. Dec. 17, 2018) (affirming step two findings based on plaintiff's failure to allege certain conditions as contributing to his inability to work, failure to testify to any of the impairments at the administrative hearing, and no indication in the record that the impairments imposed significant restrictions on plaintiff's ability to perform basic work activities).

Nor has Plaintiff shown that the ALJ failed to account for functional limitations associated with this alleged condition in determining his RFC. Where the record contains evidence indicating limitation of function due to a specific condition, the ALJ must consider the effect of that condition on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process. *See Battle v. Colvin*, 13-CV-547, 2014 U.S. Dist. LEXIS 144424, at *11-12 (W.D.N.Y. Oct. 8, 2014). Conversely, the ALJ is not required to consider the impact of such a condition where claimant did not allege it as an

impairment and no medical source diagnosed it as a distinct medical condition or found it to be a significant factor relative to claimant's ability to perform basic work activities. *Pokluda v. Colvin*, CIV-13-335, 2014 U.S. Dist. LEXIS 59337, at *27-28 (N.D.N.Y. Mar. 21, 2014) (finding no error in RFC assessment for failure to discuss plaintiff's obesity). As explained above, the record is devoid of evidence that chronic pain syndrome was a significant factor in Plaintiff's ability to perform basic work activities.

The facts here are distinguishable from *Wilson v. Colvin*, 213 F. Supp. 3d 478 (W.D.N.Y. 2016), which is relied on by Plaintiff to contend that the ALJ erred by not considering the combined effect of his alleged mental and physical impairments. There, the plaintiff argued, and the Court agreed, that the ALJ erroneously omitted chronic pain syndrome from his step two determination. *Id.*, at 486. In the record before the ALJ were two medical source statements from plaintiff's treating physician which discussed, at length, plaintiff's symptoms, treatment, and prognosis for chronic pain. *Id.*, 485-86. The physician opined that this condition caused severe pain which impaired plaintiff's ability to perform specific work activities, an opinion and diagnosis which were corroborated by treatment records that were consistent with the entire record. *Id.* at 486-87. By contrast, in this case there is no similar medical evidence or opinions before the Court to support Plaintiff's argument.

Next, the Court does not find merit to Plaintiff's claim that the limited evidence regarding this condition or the pain management referenced by PA Ramsperger, created a gap in the record. "Because a hearing on disability is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see* 20 C.F.R. § 416.912(b)(1) (the ALJ has a

responsibility to "develop [a claimant's] compete medical history"). The ALJ's duty to develop the record applies to both *pro se* and represented parties. *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 47 (W.D.N.Y. June 28, 2011). However, "where there are no obvious gaps in the administrative record and the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 48).

Here, there were no clear gaps in the administrative record that would have triggered the ALJ's duty to further develop the record. Plaintiff did not allege any physical impairments in his report or briefs to the Commissioner. He did not testify about symptoms of pain or chronic panic syndrome at the administrative hearing. He stated that the conditions which prevented him from working were bipolar disorder, depression, anxiety, agoraphobia, and panic attacks. (Tr. 45-46). At the hearing, Plaintiff's representative confirmed that the claim involved only mental impairments. (Tr. 47). Further, Plaintiff did not routinely report pain symptoms to his medical providers. The only two references to chronic pain in the record are based self-reports which lack any showing of physical limitations caused by chronic pain. Although a single treatment note references "chronic pain management," Plaintiff has not identified any treatment provider from whom the ALJ failed to obtain relevant records. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 110 (2d Cir. 2020) ("[B]ecause [plaintiff] failed to adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with 'any clear gaps in the administrative record' that gave rise to an affirmative obligation to seek a medical

opinion."). Thus, the Court concludes that there were no "obvious gaps" in the administrative record that precluded the ALJ's ability to make an informed decision.

### 2. *Evaluation of Plaintiff's Testimony*

A claimant's subjective description of his symptoms cannot alone establish disability. 20 C.F.R. § 416.929(a); Social Security Ruling (SSR) 16-3p, 2016 SSR LEXIS 4 (Mar. 16, 2016). Instead, the ALJ follows a two-step process for evaluating the claimant's subjective complaints of pain and other symptoms. *Id*. First, the claimant must provide objective medical evidence showing that a medical impairment exists, which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 416.929(b). If the claimant meets this threshold obligation, the ALJ then considers the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects his ability to work. 20 C.F.R. 416.929(c).

As the fact-finder, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). A reviewing court must give great deference to the ALJ's weighing of the claimant's subjective testimony. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("[Courts] have no reason to second-guess the credibility finding…where the ALJ identified specific record-based reasons for his ruling."); *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) ("For purposes of review, however, we have long held that "[i]t is the function of the [Commissioner], not ourselves,…to appraise the

credibility of witnesses, including the claimant.") (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). It is the ALJ, after all, who "has seen the hearing up close." *Biestek v. Berryhill*, 139 St. Ct. 1148, 1157 (2019).

Here, the ALJ carefully considered Plaintiff's subjective allegations, including his reports of anxiety, depression, and agoraphobia, manifesting in sudden panic attacks, which caused him to lose consciousness and made it difficult for him to interact with others or leave his house. The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his subjective statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 15). The ALJ then precisely explained the substantial evidentiary basis for his subjective complaint finding throughout the decision. (Tr. 14-17).

The ALJ permissibly relied on the inconsistencies between the objective medical evidence and the Plaintiff's extreme allegations to partially discount his testimony. (Tr. 15-16). *See* 20 C.F.R. § 416.929(c)(2) (explaining that the ALJ will consider objective medical evidence when evaluating a claimant's alleged symptoms). First, as the ALJ noted, the overall treatment record showed that Plaintiff's treatment was conservative, consisting of medication management without any inpatient psychiatric hospitalization, and did not support the extent of Plaintiff's alleged limitations. The ALJ cited treatment notes indicating that Plaintiff reported improvement in his depression and irritability with medication and even attempted to wean himself off his medication. The treatment records also showed that Plaintiff denied any suicidal ideation and was able to perform personal care tasks. A conservative treatment record, such as this, may be a substantial basis for

determining the credibility of a plaintiff's subjective symptom reporting. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008); *Mayor v. Colvin*, 15-CV-0344, 2015 U.S. Dist. LEXIS 168889, at *66 n.29 (S.D.N.Y. Dec. 17, 2015) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about there symptoms not credible based, inter alia, on a conservative treatment record"); *see also Shaffer v. Colvin*, 14-CV-00745, 2015 U.S. Dist. LEXIS 170267, at *15 (W.D.N.Y. Dec. 21, 2015) (finding that ALJ did not err in discrediting plaintiff's allegations because her treatment was "routine and conservative, consisting of medication management and physical therapy"); *Rivera v. Colvin*, 14-CV-00816, 2015 U.S. Dist. LEXIS 141807, at *14 (W.D.N.Y. Oct. 19, 2015) (finding that the "ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility").

Next, the ALJ found that Plaintiff's relatively normal mental status findings did not support Plaintiff's allegations. The ALJ referred to examination findings from treating providers Dr. Wendy Weinstein and Sarah Ramsperger, PA-C, as well as consultative examiner Dr. Susan Santarpia, which uniformly indicated that the Plaintiff was within normal limits cognitively. He was cooperative, could follow written and spoken instructions, had intact memory, his thought process was goal directed, his concentration was adequate, and he could perform simple calculations and serial-seven testing.

In addition to relying on the objective medical evidence, the ALJ also relied on opinion evidence to partially discount Plaintiff's subjective complaints. He found the prior administrative findings of the State agency consultant, T. Bruni, Ph.D., persuasive based on being well supported and generally consistent with the overall record. Dr. Bruni opined that Plaintiff had moderate limitations in interacting with others; concentrating, persisting,

and maintaining pace; and adapting and managing himself. Dr. Bruni further opined that Plaintiff had mild limitations in understanding, remembering, and applying information. The ALJ also relied partially on the opinion of Dr. Santarpia, which he found "somewhat persuasive." Dr. Santarpia opined that Plaintiff could understand, remember, and apply both simple and complex direction and instructions; make work-related decisions; sustain concentration to perform tasks at a consistent pace. She further opined that Plaintiff had mild impairments to interacting with others, controlling behavior, and regulating emotions. The content of these opinions was properly relied on by the ALJ to assess Plaintiff's credibility and to inform his RFC determination about the extent of Plaintiff's impairments.

The Court rejects Plaintiff's argument that the ALJ's references to his cognitive functioning and ability to follow instructions, perform calculations, and use memory recall, are not indicative of Plaintiff's ability to function in a work environment despite persistent fear of leaving his house and frequent panic attacks. Findings related to global cognitive functioning and mental ability are certainly relevant to determining the extent and effect of mental impairments caused by Plaintiff's depression, anxiety, or agoraphobia. As the ALJ explained in his decision, "there is an overlap in symptomology between different mental impairments," and accordingly, "the claimant's psychological symptoms and their effect on functioning have been considered together, instead of separately, regardless of the diagnostic label attached." (Tr. 15).

Further, despite Plaintiff's arguments to the contrary, the ALJ built a "logical bridge" between the evidence and the findings of the RFC which allows for meaningful judicial review. *See Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) (internal citations omitted) ("[I]t is the ALJ's responsibility . . . to build an accurate and

logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). Unlike the cases cited by Plaintiff, the ALJ detailed the objective and opinion evidence relating to Plaintiff's anxiety, agoraphobia, and panic attacks and then explained how that evidence supported his RFC findings. *See Cecelia J. v. Comm'r of Soc. Sec.*, 19-CV-1483, 2021 U.S. Dist. LEXIS 23755, at *7-9 (W.D.N.Y. Feb. 8, 2021) (remanding where ALJ failed to explain how the evidence cited supported the functional limitations he imposed, and because no underlying rationale was articulated); *Carl D. v. Comm'r of Soc. Sec.*, 18-CV-1106, 2019 U.S. Dist. LEXIS 184835, at *23 (N.D.N.Y. Oct. 25, 2019) (remanding based on ALJ's failure to provide rationale for decision and because it was not clear that the ALJ properly considered the entirety of the evidence related to Plaintiff's alleged neck impairment); *Gorny v. Comm'r of Soc. Sec.*, 18-CV-06, 2018 U.S. Dist. LEXIS 184815, at *10-11 (W.D.N.Y. Oct. 29, 2018) (remanding because, although the ALJ summarized the record and analyzed the consistency of Plaintiff's allegations with her treatment history, daily activities, and employment record, he did not explain how the record evidence supported his RFC findings).

Here, the ALJ specifically explained that the examination findings, the lack of hospitalization, and the overall treatment record did not such support the extent of Plaintiff's alleged limitations to getting along with others, remembering, paying attention, and completing tasks. (Tr. 15). The ALJ also considered and reviewed the opinion of Dr. Santarpia in a manner which supports the limitations he imposed. Dr. Santarpia opined that Plaintiff had only mild impairments to interacting with others, controlling behavior, and

17

regulating emotions. The ALJ found this opinion "somewhat persuasive," but acknowledged that "claimant exhibited isolative behavior" and was withdrawn on exam. (Tr. 16). Recognizing this evidence, the ALJ explained that he "assigned more restrictive limitations to interacting with others," namely limitation to occasional contact with the general public and superficial contact with co-workers and supervisors. (*Id.*). Further, the ALJ provided specific reasons for his rejection of PA Ramsperger's opinion that the impact of Plaintiff's symptoms of agoraphobia, e.g., excessive time off task and absenteeism, would significantly impair or preclude his ability to function in a work setting.[4] (Tr. 16-17). These findings and detailed explanations allow the Court to easily glean the ALJ's rationale in crafting the RFC.

The Court also rejects Plaintiff's claim that the ALJ inaccurately purported that his concentration was adequate when treatment records referenced diminished concentration. The ALJ expressly found, based on the treatment records, that Plaintiff had mild limitation in concentrating, persisting, and maintaining pace. (Tr. 13). Acknowledging Plaintiff's complaints about difficulty focusing and concentrating, the ALJ based this finding off treatment notes and medical opinions which indicated that Plaintiff's impairments in this category were mild to moderate. (Tr. 13; 15-16). Accordingly, he assigned a restriction to simple, routine, repetitive tasks in the RFC assessment. Plaintiff seeks a re-weighing of the evidence which is not within the authority of this Court. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) ("When 'there is substantial evidence to support either position, the determination is one to be made by the fact-finder,'

---

[4] The Court notes that Plaintiff has not challenged the ALJ's evaluation of the opinion evidence. Thus, the Court does not analyze the ALJ's findings or explanations as to the persuasiveness of any opinion in the record.

and we will regard this determination as conclusive.") (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

In sum, the ALJ provided ample supporting rationale for his finding that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record." *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("The ALJ's Decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight."); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("While it is not sufficient for the ALJ to make a singly conclusory statement that the claimant is not credible or simply to recite the relevant factors...remand is not required where the evidence of record permits [the Court] to glean the rational of the ALJ's decision.").

For these reasons, the Court finds that the ALJ's decision was based on proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 15, 2022
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge